UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVO FORCHU NANGAH (A-077-030-460),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-08592-TLN-CSK<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

Petitioner Ivo Forchu Nangah (A-077-030-460), a native and citizen of Cameroon, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner entered the United States in 1989 on a visitor visa. On May 13, 2026, when petitioner appeared before U.S. Citizenship and Immigration Services ("USCIS") for an interview regarding his application for adjustment of status, U.S. Immigration and Customs Enforcement ("ICE") took petitioner into custody. ICE first issued petitioner a final administrative order of removal for having been convicted of an aggravated felony, but later placed petitioner in removal proceedings. This habeas action concerns petitioner's ICE detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted.

## I. FACTUAL BACKGROUND

Petitioner entered the U.S. in August 1989 on a visitor visa and remained in the U.S. beyond the time permitted. (ECF No. 8-1 at 9, 10.) On September 13, 2021, petitioner was

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

convicted under Florida Statute § 784.021.1(a) for aggravated assault with a deadly weapon, § 790.01(1) for carrying a concealed weapon, and § 790.231(a) for possession of a firearm by a felon.[2] (ECF No. 8-2 at 1-19.) As the beneficiary of an approved I-130 petition for alien relative filed by one of his U.S. citizen sons, petitioner applied to adjust his status to lawful permanent resident. (ECF No. 1 at 5, 20.) When petitioner appeared at a USCIS office for the adjustment of status interview on May 13, 2026, ICE took him into custody. (ECF No. 8-1 at 2, 10.) ICE initially processed petitioner for a final administrative removal order pursuant to 8 U.S.C. § 1228(b), charging petitioner as deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. (ECF No. 1 at 23-25; ECF No. 8-1 at 18-21.) Rather than execute the final administrative order of removal, ICE later placed petitioner in removal proceedings under 8 U.S.C. § 1229. (ECF No. 8-1 at 6-8.) ICE served petitioner a notice to appear ("NTA") on July 30, 2026, charging him as removable under I.N.A. § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for having overstayed the visitor visa. (Id.) A custody redetermination (bond) hearing was scheduled for August 24, 2026, but did not proceed on the merits.[3]

## II. PROCEDURAL BACKGROUND

On October 19, 2026, petitioner filed his petition for writ of habeas corpus, a motion to proceed in forma pauperis, and a motion to appoint counsel. (ECF Nos. 1, 2, 3.) On October 21, 2026, Chief District Judge Troy L. Nunley referred this matter to the undersigned and ordered respondent not to transfer petitioner out of this district. (ECF No. 5.) On October 23, 2026, the undersigned granted petitioner's motion to proceed in forma pauperis and set a briefing schedule. (ECF No. 7.) On October 30, 2026, respondent timely filed a response to the petition. (ECF No. 8.) Petitioner filed a traverse on November 17, 2026. (ECF No. 10.) Briefing is now complete.

///

---

[2] Petitioner's additional criminal history (ECF No. 8-2 at 20-68) is not relevant to this petition, as respondent only alleges that the 2021 aggravated assault conviction renders him subject to detention.

[3] The immigration judge's order indicates that the bond request was withdrawn (ECF No. 8-3) but petitioner claims that he did not request the hearing, that the hearing was cancelled due to a detention facility quarantine, and that he was never offered the opportunity to request bond. (ECF No. 10 at 2.)

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner claims that his prolonged detention, without an individualized determination of danger to the community or risk of flight, violates the Due Process Clause of the Fifth Amendment. [4] (ECF No 1 at 16.) Respondent argues that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B), as he has been convicted of an aggravated felony, and that § 1226(c) detention generally does not violate due process. (ECF No. 8 at 2-4.)

### A. Statutory Basis for Detention

In analyzing petitioner's challenge to his detention, the Court "must first identify the statutory provision that purports to confer" authority for his detention. Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Respondent argues that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(B) based on his conviction under Florida Statute §784.021(1)(a) for aggravated assault with a deadly weapon. Under § 1226(c)(1)(B), detention is mandatory for any noncitizen who is deportable under § 1227(a)(2)(A)(iii) for having been

---

[4] In his traverse, petitioner also claims that his detention violates due process because he was detained at his adjustment of status interview without a warrant, and that the removal documents were invalid. (ECF No. 10 at 2.) New claims cannot be raised in a traverse. In addition, because the Court is granting the petition on the initial claim, it need not reach additional claims raised.

convicted of an aggravated felony any time after admission. 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii). Included in the aggravated felony definition are "crimes of violence" for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43)(F). The Eleventh Circuit has held that Fla. Stat. § 784.021(1)(a) is a "crime of violence" properly classified as an aggravated felony. Senatus v. U.S. Attorney General, 177 F.4th 1177, 1183 (11th Cir. 2026).[5] Based on the record presently before the Court, this Court concludes, for the purposes of this habeas petition, that 8 U.S.C. § 1226(c)(1)(B) provides the proper detention authority.

Pursuant to § 1226(c), "detention is mandatory, and a noncitizen of the United States . . . therefore is not statutorily entitled to a bond hearing." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023); see 8 U.S.C. § 1226(c)(1); Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). However, additional process may be required to determine whether detention under § 1226(c) is appropriate. The Board of Immigration Appeals ("BIA") has found that noncitizens are entitled to notice of the circumstances that provide the basis for mandatory detention and an opportunity to challenge the detention before an immigration judge. In re Kotliar, 24 I. & N. Dec. 124, 127 (BIA 2007). This is a different process than a hearing pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999) ("Joseph hearing"). In a Joseph hearing, an immigration judge determines whether it is substantially unlikely that the charges of *removability* that subject the noncitizen to mandatory detention will be sustained. Kotliar, 24 I. & N. Dec. 124 at126 (citing Joseph, 22 I. & N. Dec. 799, 808) (emphasis added). In the instant case, the conviction under Fla Stat. § 784.021(1)(a)– a factor critical to ICE's determination that petitioner is subject to mandatory detention– is not included in the Notice to Appear. The NTA charges petitioner under I.N.A. §237(a)(1)(B), 8 U.S.C. §1227(a)(1)(B), for having overstayed a visa, and the factual allegations make no mention of the assault conviction. (ECF No. 8-1 at 6-8.) Where the record reflects that a noncitizen has committed any of the offenses covered in the relevant subsections enumerated in § 1226(c), the noncitizen is subject to mandatory detention without regard to whether the

---

[5] A petition for certiorari has been filed. See Woff Senatus, Petitioner v. Todd Blanche, Attorney General, No. 26-5731 (U.S. Oct. 2, 2026). The Ninth Circuit does not appear to have addressed this issue.

government has also lodged a removability charge based on the offense. Kotliar, 24 I. & N. Dec. 124 at 126. The record in this case does contain evidence that petitioner has been convicted under Fla. Stat.§ 784.021(1)(a), ostensibly an aggravated felony which would invoke § 1226(c)(1)(B). (ECF No. 8-2.) However, if, as here, the basis for detention is not included in the NTA, the noncitizen "must be given notice of the circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the detention before the Immigration Judge during the bond redetermination hearing." Id. The complete basis for petitioner's detention– the aggravated assault conviction– was not included in the NTA. Nor has petitioner been provided a hearing to challenge the detention. The lack of notice and opportunity for a hearing in this context violate petitioner's procedural due process rights.

**B. Prolonged Detention**

Petitioner has also raised a due process claim regarding the length of detention, which has now exceeded six months. While the Supreme Court has rejected a facial challenge to mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510 (2003), an as applied challenge is not foreclosed and Justice Kennedy's concurring opinion in Demore specifically noted that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as [Kim] could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532. In addition, "[t]he Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c)." Loba L.M. v. Andrews, et al., No. 1:25-cv-00611-JLT-SAB, 2025 WL 2939178, at *4 (E.D. Cal. Oct. 16, 2025), report and recommendation adopted, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025); see Avilez, 69 F.4th at 538 (declining to determine whether due process requires a bond hearing for noncitizens detained pursuant to § 1226(c)). "Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), the First, Second, and Third Circuits have found that 'the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)].'" Loba L.M., 2025 WL 2939178, at *5 (quoting Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021); citing

Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing")); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209-10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable)). "[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v. Clark, No. 2:18-cv-1669 RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citation omitted); see also Loba L.M., 2025 WL 2939178, at *5. This Court joins other courts that have found that unreasonably prolonged detention pursuant to § 1226(c) without a bond hearing can violate due process. See Keo v. Chestnut, No. 1:26-cv-1192 DJC CSK, 2026 WL 747117, at *2 (E.D. Cal. Mar. 17, 2026); Loba L.M., 2025 WL 2939178, at *5.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 818 F. Supp. 3d 1141, 1151 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 693).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Court concludes

that petitioner has a protected liberty interest in his freedom from detention. See Keo, 2026 WL 747117, at *2 (concluding clear liberty interest in freedom from detention where petitioner was detained pursuant to § 1226(c) for over 37 months). Petitioner has been detained over six months since May 2026 and faces prolonged detention through the remainder of removal proceedings, including potential appeal to the BIA and further potential judicial review. This also exceeds the time period the Supreme Court noted in Demore: "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 530.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of the protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.[6] Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing

[6] "District courts within this Circuit have adopted a variety of multi-factor tests for determining at what point a noncitizen detained pursuant to a mandatory detention statute is constitutionally entitled to a bond hearing." Mohammed v. Warden of California City Detention Center, No. 1:26-cv-0118 DJC CSK, 2026 WL 192368, at *3 (E.D. Cal. Jan. 26, 2026) (applying Mathews test to prolonged detention claim under § 1225(b)(1)). Cf. Keo, 2026 WL 747117, at *2 (applying seven factor test from Martinez, 2019 WL 5968089, at *7, to prolonged detention claim under § 1226(c)). As the considerations in the various multi-factor tests are relevant to the due process analysis, the Court will address them within the Mathews framework.

Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.)); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). The length of future detention is unknown and prolonged as removal proceedings remain pending and could become subject to BIA appeal and further judicial review. The Court also notes a government-caused delay. ICE initially processed a final administrative order of removal, then, over two months later, placed petitioner in full removal proceedings under a different charge, without explanation.[7] (See ECF No. 8-1 at 6-8, 13-21.) The first factor therefore weighs in petitioner's favor.

Second, "[t]he risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Here, petitioner has been detained since May 2026 without a bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. It is not this Court's role to determine whether petitioner is a danger or flight risk, and a neutral arbiter may very well determine that petitioner is a danger given the seriousness of his criminal convictions.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Overall, balancing these factors, the Court finds that petitioner is entitled to a bond hearing under the Due Process Clause where he has been detained for over six months, removal

[7] It does not appear that the NTA was filed as a result of a reasonable fear interview, per 8 C.F.R. §§ 238.1(f)(3), 208.31. See ECF No. 8-1 at 6.

proceedings remain pending, and the length of his future detention is unknown where further judicial review is available. See also Jose G. M. L. v. Warden of the Golden State Annex Detention Facility, et al., No. 1:26-cv-0047 TLN EFB, 2026 WL 472987, at *5 (E.D. Cal. Feb. 19, 2026) (granting preliminary injunctive relief for a bond hearing where the petitioner's detention under § 1226(c) exceeded six months).

## V. MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel. (ECF No. 3.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. Because the Court recommends the petition be granted and petitioner receive a bond hearing, the Court does not find the interests of justice require appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore denied without prejudice.

## VI. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 3) is DENIED WITHOUT PREJUDICE; and

Further, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondent be ordered to provide petitioner Ivo Forchu Nangah (A-077-030-460), within fourteen (14) days of the adoption of these findings and recommendations: (1) formal notice of the circumstances which provide the basis of his detention; and (2) a hearing before an immigration judge in which:
    a. The immigration judge determines whether such circumstances warrant detention pursuant to 8 U.S.C. §1226(c)(1)(A), and,
    b. Respondent bears the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify continued detention.

    Respondent must provide notice to petitioner and if petitioner has counsel, also

petitioner's counsel, with at least seven (7) days' notice before the bond hearing. If petitioner has counsel, petitioner shall be allowed to have counsel present at any such hearing. If the petitioner requests additional time before the immigration judge, the time for the respondents to comply with the bond hearing order is automatically extended. Any representation by the petitioner in immigration court that the petitioner is not prepared to go forward with the bond hearing shall be treated as a request for a continuance, and not a withdrawal of the bond hearing request.

3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 24, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

11/forc8592.157.2241.imm.bond